UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LUIS ALBERTO RITCHIE**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**MARCO RUBIO**, in his official capacity as Secretary of State, *et al.*,<br><br>Defendants. | No. 25-cv-1278 (TSC) |

## MEMORANDUM OPINION

Plaintiffs are Luis Alberto Ritchie, a 28-year-old American citizen, and his father, Jesus Ritchie Estrada, a Mexican national. Compl. ¶¶ 4, 16–17, 43, ECF No. 1. In March 2024, a consular officer denied Estrada's visa application on the ground that there was "reason to believe" Estrada was or had been involved "in drug trafficking." *Id.* ¶¶ 23–24; *see also* 8 U.S.C. § 1182(a)(2)(C)(i). Plaintiffs then filed this suit, seeking to compel Defendants to provide a facially legitimate and bona fide explanation for the denial of Estrada's application. Compl. ¶¶ 63–64, 73. Defendants now move to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mot. to Dismiss, ECF No. 23. Although the court is sympathetic to Plaintiffs' hardship, the doctrine of consular nonreviewability bars their suit and, in any event, Plaintiffs have already received a legally sufficient explanation. The court will therefore GRANT Defendants' motion.

### I.   ANALYSIS

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Denying a visa" is a sensitive decision that "may implicate" foreign policy or "changing political and economic circumstances"; accordingly, such decisions are committed to "the political branches, with limited judicial review." *Colindres v. U.S. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023) (cleaned up); *see also Trump v. Hawaii*, 585 U.S. 667, 702 (2018) ("For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." (cleaned up)). Indeed, because the "Immigration and Nationality Act . . . does not authorize judicial review of a consular officer's denial of a visa," federal courts, "as a rule, . . . cannot review those decisions." *Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024) (cleaned up). This principle—known as the doctrine of consular nonreviewability—is subject to "two narrow exceptions." *Colindres*, 71 F.4th at 1021.

"The first exception applies when 'a statute expressly authorizes judicial review,'" but it "is not at issue here because [Plaintiffs] have pointed to no statute that allows review." *Colindres*, 71 F.4th at 1021 (quoting *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020, 1025 (D.C. Cir. 2021)). Instead, Plaintiffs rely on the "second exception," which "lets 'an American citizen . . . challenge the exclusion of a noncitizen if it burdens the citizen's [fundamental] constitutional rights.'" *Id.* (quoting *Baan Rao*, 985 F.3d at 1024); *see also id.* at 1023 ("Because the Colindreses cannot show that the Government's visa denial burdened Mrs. Colindres's fundamental rights, their suit does not fall within the constitutional-rights exception[.]"). This exception originates from the Supreme Court's decision in *Kleindienst v. Mandel*, 408 U.S. 753 (1972). But even if the *Mandel* exception applies, the government need only provide "a 'facially legitimate and bona fide reason' for denying [the] visa." *Colindres*, 71 F.4th at 1021 (quoting *Mandel*, 408 U.S. at 770). If it has, the court's review ends. *See id.* at 1024.

To the extent Estrada himself seeks to invoke the *Mandel* exception, *see* Pls.' Opp'n at 8, 24–26, ECF No. 25, that attempt fails. The second exception allows only "an American citizen" to challenge a visa denial "if it burdens *the citizen's* constitutional rights." *Colindres*, 71 F.4th at 1021 (emphasis added) (cleaned up). Estrada, "as a noncitizen [with] no constitutional right to enter the United States," cannot "challenge the denial of his visa." *Muñoz*, 602 U.S. at 902.

Although Ritchie is an American citizen, his effort to invoke *Mandel* fares no better. Ritchie claims that the denial of his father's visa burdens *his* procedural due process rights. *See* Pl.'s Opp'n at 8, 26. An individual does not usually have "a procedural due process right in *someone else's* legal proceeding." *Muñoz*, 602 U.S. at 916 (emphasis in original). And indeed, "*Mandel* does not hold that citizens have procedural due process rights in the visa proceedings of others." *Id.* at 917. Instead, *Mandel* involved the denial of a visa for a self-described "revolutionary Marxist, Ernest Mandel, who had been invited to speak at a conference at Stanford University." *Hawaii*, 585 U.S. at 703 (citing *Mandel*, 408 U.S. at 756–57). A group of American professors sued, arguing "that the denial of Mandel's visa directly deprived them of their First Amendment right[]" to hear Mandel speak. *Muñoz*, 602 U.S. at 918. "To make an argument logically analogous to that of the professors, [Ritchie] would have to claim that the denial of [Estrada's] visa denied [his] *substantive* due process" by depriving him of a fundamental liberty interest, and that this deprivation entitles him to procedural due process in his father's visa denial. *Id.* at 918–19 (emphasis added); *see also Colindres*, 71 F.4th at 1023 ("Because the Colindreses cannot show that the Government's visa denial burdened Mrs. Colindres's *fundamental* rights, their suit does not fall within the constitutional-rights exception[.]" (emphasis added)); *Muñoz*, 602 U.S. at 934 (Sotomayor, J., dissenting) ("[A] *fundamental* right may trigger procedural due process protectives over a noncitizen's exclusion[.] (emphasis added)).

But Ritchie cannot point to any right so "objectively, deeply rooted in this Nation's history and tradition" as to be considered fundamental. *Muñoz*, 602 U.S. at 910 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). To start, "an adult citizen has no fundamental right to have his or her unadmitted [noncitizen] parent immigrate into the United States." *See Khachatryan v. Blinken*, 4 F.4th 841, 860 (9th Cir. 2021); *cf. Muñoz*, 602 U.S. at 909 ("[W]e hold that a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country."); *Butera v. District of Columbia*, 235 F.3d 637, 656 (D.C. Cir. 2001) ("A parent does not have a constitutionally-protected interest in the companionship of a child who is past minority and independent."). Ritchie suggests that the visa denial's determination that there is reason to believe his father has been involved in drug trafficking deprives him of his ability to do business with his father. *See* Pl.'s Opp'n at 7, 13–17. Even assuming a deprivation has occurred—and that is far from clear—Ritchie's argument still fails because the fundamental "'liberties' protected by substantive due process do not include economic liberties." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env. Prot.*, 560 U.S. 702, 721 (2010). Congress's "broad [and] comprehensive powers to regulate Commerce with foreign nations," moreover, cuts against any argument that there is a fundamental right to transact business with a foreign national. *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985) (cleaned up); *see also Muñoz*, 602 U.S. at 903 ("Congress's longstanding regulation of spousal immigration . . . cuts" against *Muñoz*'s contention that there is a fundamental right to immigrate one's spouse.).

Even if the *Mandel* exception applied, Plaintiffs' claim would fail on the merits. In applying the *Mandel* exception, "[c]ourts ask only whether the government has given 'a facially legitimate and bona fide reason' for denying a visa"—a "requirement [that] is easy to satisfy." *Colindres*, 71 F.4th at 1024 (quoting *Mandel*, 408 U.S. at 770). The government meets this burden

by merely "citing a statutory provision that specifies discrete factual predicates the consular officer must find to exist before denying a visa." *Id.* (cleaned up).  Once the government provides such a citation, "'the courts will neither look behind the exercise of [the consular officer's] discretion, nor test it by balancing its justification' against the asserted constitutional interests of U.S. citizens." *Hawaii*, 585 U.S. at 703 (quoting *Mandel*, 408 U.S. at 770).

Here, the consular officer cited 8 U.S.C. § 1182(a)(2)(C)(i).  *See* Compl. ¶¶ 23–24.  That statutory provision specifies a factual predicate:  The consular officer must know or have reason to believe that the applicant "is or has been an illicit trafficker in any controlled substance or . . . listed chemical," or has knowingly aided and abetted such trafficking.  8 U.S.C. § 1182(a)(2)(C)(i).  Citing this provision "was all the officer was required to do." *Colindres*, 71 F.4th at 1024.  And because the Ritchies make no assertion of bad faith on the part of the consular officer, there is no question that this explanation was bona fide.  *See id.*

## II.   CONCLUSION

Although the court is sympathetic to Plaintiffs' desire for more clarity, the court is without any power to review the denial of Estrada's visa.  Even if the Mandel exception applied, the consular officer's citation to 8 U.S.C. § 1182(a)(2)(C)(i) would end the court's review.  The court is therefore constrained to GRANT Defendant's motion to dismiss.  A separate order will follow.

Date: December 17, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge